The plaintiff produced a grant to James Spiller from the State, dated in October, 1787, and deduced title regularly from the grantee. Neither the grantee nor any person under him has ever had any actual possession of the premises in dispute. The defendant claims under one Marley, to whom a grant issued from the State in November, 1805, in pursuance of a sale made by the commissioner of confiscated property, who had sold the land described in the declaration as the property of one Thomas Christie of Ireland, whose property in the State had been confiscated by the act of 1779, ch. 2. The defendant alleged that the land in question had been granted by the said Christie at a very early period of the settlement of this country by the Lords Proprietors. It was admitted by plaintiff's counsel that diligent search had been made by defendants, and that no grant to said Christie and that the copy of no grant could be found. The defendant and those under whom he claims have been in actual possession of the land in question (369) ever since the grant issued to the said Marley in 1805.
The defendant then offered in evidence the following circumstances to show that the land had been granted to the said Christie. The witness proved that about forty-eight years ago he was called on as a surveyor by one McDonald, who called himself the agent of Christie, to survey a large tract of land, including the premises in question. He saw no grant, and no paper was exhibited to him by the said agent except a plat which was of the size and shape of those which were formerly attached to old grants, but smaller than the plats which were usually attached to grants that issued about the time that he was requested to make the survey. There was no seal on the plat. And he does not recollect whether there was any hole through the plat by which it might have been attached to a grant. That he ran the lines agreeably to the plat, and found the two first lines plainly marked all the way, and three corner trees; one of the corner trees was short of the distance mentioned in the plat; the corner trees and all the line trees were uniform in appearance, and bore the marks of great age. On the third and fourth lines he found no marked trees; but he stated it was usual at the time this land must have been surveyed, from the age of the marked trees, for the first and second lines only to be marked, and for the plats to be made out without running the third and fourth lines.
The plat above spoken of represented the tract as square. One of the lines would have answered for a line of a large tract granted to Richard Dobbs. He does not know that the other marked line would have answered as the line of any adjoining tract, but the three corner trees designated the land delineated in the plat. He did not know that any grant had ever issued to Christie for the land. He had never seen one *Page 284 
or heard that one had issued. Neither Christie nor any person under him ever had actual possession of the land in dispute. Christie resided in Ireland, and he does not know nor did he ever hear that (370) Christie ever owned any other land in this State. The witness was called on to survey this large tract because several persons were in actual possession of parts of it; four or five persons were assembled to accompany the survey and protect him from the threatened attacks of those who were in possession. The lands represented in the plat, and which he ran, were called in the neighborhood and generally understood to be Christie's lands. The persons in possession disputed that Christie had title, and, if he had title, their possession gave them title.
The act of 1779, ch. 2, confiscated all the property of Thomas Christie in this State. The infancy of the lessor of the plaintiff in this case has prevented the operation of the statute of limitation. From these circumstances the jury presumed that a grant had issued for the land in dispute to Christie, and found the defendant not guilty of the trespass and ejectment, laid in the declaration. Plaintiff moved for a new trial, first, on the ground that no grant can be presumed where there has been no possession of the premises, and, second, if a grant can be presumed where there has not been possession, these facts are not sufficient to warrant the verdict of the jury.
Motion overruled by the court, and a new trial refused. Appeal.
Browne for plaintiff: There is no case to be found where a grant has ever been presumed without possession. Gilb. S.E., 27, 28; Peake, 22, 110, 301, 2. Nor ought such a presumption to be made here, even with possession, so readily as it is in England, because all grants must be registered; and this was required so early as by the great deed of grant. It is observable that one of the evils complained of in the act of 1715, ch. 33, sec. 6, is that persons pretended title to large tracts of land upon a bare entry or survey.
Shaw for defendant: Possession of lands, according to the books, always means an actual possession, and refers to a state of things where the land is generally occupied. But necessity has enacted and (371) usage sanctioned a different notion of possession in this State; and a constructive possession is equivalent to an actual one. If, then, other circumstances are equal, may not a grant be presumed from such possession?
Browne was about to reply, but was estopped by the Court.
It is a very clear rule of law that the existence of a grant cannot be presumed unless the party claiming the benefit of such *Page 285 
presumption proves the actual possession of the land. No such possession having been proved here, the verdict must be set aside and a new trial granted.
NOTE. — See Clark v. Arnold, 3 N.C. 287; Dancy v. Sugg, 19 N.C. 515.